**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

REGINA T. DREXLER,

    Plaintiff - Appellant,

v.

PHILIP WEISER, in his official capacity
as the Attorney General of Colorado;
JOHN WALSH, in his official capacity as
elected District Attorney for the Second
Judicial District; PRESIDING JUDGE IN
DENVER DISTRICT COURT DIVISION
414, in his/her official capacity; STATE
COURT ADMINISTRATOR, in his/her
official capacity; CHIEF JUDGE OF THE
DENVER DISTRICT COURT, in his/her
official capacity; PRESIDING JUDGE OF
THE DENVER COUNTY COURT, in
his/her official capacity; PRESIDING
JUDGE IN DENVER COUNTY COURT
COURTROOM 159; CHIEF JUDGE AND
PRESIDING JUDICIAL OFFICIALS IN
THE COLORADO COURT OF
APPEALS, in their official capacities;
CHIEF JUSTICE OF THE COLORADO
SUPREME COURT, in his/her official
capacity; JOHN DOE,

    Defendants - Appellees.

No. 25-1173
(D.C. No. 1:21-CV-00805-DDD-KAS)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]

_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Before **BACHARACH** and **MORITZ**, Circuit Judges, and **SHELBY**, District Judge[**].

_____

Regina Drexler sued several Colorado state officials, alleging that multiple Colorado statutes and one Colorado court rule violated her First and Fourteenth Amendment rights. The district court dismissed her complaint for lack of jurisdiction based on Eleventh Amendment immunity and lack of standing. Drexler disagrees with that ruling, but we affirm. The Attorney General, the State Court Administrator, and the judicial defendants are immune from suit, and the exception in *Ex parte Young*, 209 U.S. 123 (1908), for suits seeking prospective injunctive relief from government officials does not apply because none of these defendants enforce the challenged statutes. And although the District Attorney does enforce the challenged criminal statutes, Drexler cannot show a credible threat that the District Attorney will do so in a manner that infringes on her First Amendment rights, so those claims fail for lack of standing. Last, Drexler's cursory procedural arguments lack merit.

### Background

The claims in this litigation originated from the breakup of Drexler's friendship and brief romantic entanglement with another woman. In the early 2010s, during the fallout of that relationship, Drexler wrote, published, and performed literary essays about her experience. But according to the other woman, Drexler was stalking her. She argued that the essays (among other things) constituted harassment,

_____

[**] The Honorable Robert J. Shelby, U.S. District Judge, District of Utah, sitting by designation.

and in 2015, she obtained a protection order in Colorado state court restricting Drexler's proximity to her and her children. Drexler's state-court attempts to appeal and dismiss the protection order were unsuccessful, and the state court ultimately ordered Drexler to pay nearly $200,000 in attorney fees.

In March 2021, Drexler filed this federal action, purporting to seek habeas relief from the protection order and asserting claims under 42 U.S.C. § 1983 challenging both the protection order and the underlying Colorado statutes governing the protection order. The district court dismissed Drexler's complaint in September 2021, and Drexler appealed.

We first denied a certificate of appealability on Drexler's habeas claim, ruling that she was not even debatably in custody for habeas purposes. *Drexler v. Spahn*, No. 21-1368, 2022 WL 17333076, at *1 (10th Cir. Nov. 30, 2022) (unpublished). In so doing, we rejected Drexler's interpretation of the protection order as infringing on her First Amendment rights, explaining that the order "didn't say anything that would restrict . . . Drexler's right to speech." *Id.* at *2. Second, we agreed with the district court that the *Rooker-Feldman* doctrine[1] barred Drexler's challenge to the protection order. *Id.* at *4. But we concluded that *Rooker-Feldman* did not bar Drexler's constitutional challenge to Colorado's protection-order statutes, so we remanded in limited part. *Id.*

---

[1] Generally speaking, this doctrine provides that federal courts lack jurisdiction to consider a challenge to a state-court ruling. *See D.C. Ct. App. v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923).

Back at the district court, Drexler twice amended her complaint to add claims and defendants. In early 2024, the district court consolidated this action with another case filed by Drexler and ordered her to file an amended consolidated complaint. The amended consolidated complaint—the fourth in this action and the operative one on appeal—ignores our prior ruling that the protection order doesn't restrict Drexler's First Amendment speech rights and continues to allege that Drexler "has foregone literary and other protected speech since the initial protection order was imposed in 2015." App. vol. 7, 1860. It also alleges that she "has . . . refrained from exercising her right to petition the courts." *Id.*

Drexler's amended consolidated complaint seeks prospective declaratory and injunctive relief based on challenges to (1) Colorado's protection-order statutes, both civil and criminal (against the District Attorney, the Attorney General, the State Court Administrator, and the county judicial defendants[2]); (2) Colorado's criminal stalking statute (against the District Attorney and the Attorney General); (3) Colorado's attorney-fee statute (against the Attorney General, the State Court Administrator, the county judicial defendants, and some state judicial defendants[3]); (4) Colorado's appeal statutes (against the Attorney General and some state judicial

---

[2] There are two county judicial defendants: the Presiding Judge of the Denver County Court and the county judge assigned to courtroom 159.

[3] There are four state judicial defendants: the Chief Judge of the Denver District Court, the judge assigned to Division 414, the Chief Judge and Presiding Judicial Officials of the Colorado Court of Appeals, and the Chief Justice of the Colorado Supreme Court. Drexler's complaint seeks relief on her attorney-fee-statute claim against only the Chief Judge of the Denver District Court and the Division 414 judge.

4

defendants[4]); and (5) Colorado's rules on reply briefs (against the Attorney General and some state judicial defendants[5]).

The defendants all moved to dismiss for lack of jurisdiction. The district court granted defendants' motions. It concluded that Drexler could not sue the Attorney General, the State Court Administrator, or any judicial defendants under the *Ex parte Young* exception to Eleventh Amendment immunity because none of those defendants enforced the challenged statutes.[6] It also ruled that Drexler lacked an injury sufficient for Article III standing on her challenges to the criminal protection-order and stalking statutes—which could proceed against the District Attorney under *Ex parte Young*—because she had not demonstrated a credible threat of enforcement. The district court explained that not only did the protection order not restrict Drexler's First Amendment rights, but the District Attorney had filed a declaration promising not to prosecute Drexler for protected First Amendment conduct. Last, the district court dismissed the John Doe defendant, reasoning that Drexler had ample time and opportunity to identify the proper defendants and amend her complaint but failed to do so. Thus, the district court dismissed all Drexler's claims without prejudice for lack of jurisdiction.

---

[4] Specifically, the Chief Judge and Presiding Judicial Officials of the Colorado Court of Appeals and the Chief Justice of the Colorado Supreme Court.

[5] Specifically, the Chief Justice of the Colorado Supreme Court and the Chief Judge of the Denver District Court.

[6] Given the "common thread between Article III standing analysis and *Ex parte Young* analysis," the district court alternatively ruled that Drexler lacked standing to sue these defendants. *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013).

Drexler appeals.

## Analysis

Drexler challenges the district court's rulings on the *Ex parte Young* exception to the Eleventh Amendment and standing. We review both de novo. *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 735 (10th Cir. 2024) (Eleventh Amendment); *Peck v. McCann*, 43 F.4th 1116, 1124 (10th Cir. 2022) (standing).

## I.    *Ex parte Young* Exception to Eleventh Amendment Immunity

"The Eleventh Amendment constitutionalizes the doctrine of state sovereign immunity" and bars citizens from suing both states and state officials in their official capacity. *Free Speech Coal.*, 119 F.4th at 735–36 (quoting *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021)). "But *Ex parte Young* created an exception under which individuals can sue state officers in their official capacities if the lawsuit seeks prospective relief for an ongoing violation of federal law." *Id.* at 736. *Ex parte Young* applies only if the state official "ha[s] some connection with the enforcement of the challenged statute." *Id.* (cleaned up) (quoting *Hendrickson*, 992 F.3d at 965). This connection need not be particularly special, but *Ex parte Young* "requires something 'more than a mere general duty to enforce the law.'" *Id.* at 739 (quoting *Hendrickson*, 992 F.3d at 965). Rather, the official "must 'have a particular duty to enforce the statute in question *and* a demonstrated willingness to exercise that duty.'" *Id.* at 736 (emphasis added) (cleaned up) (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007)); *see also Prairie Band*, 476 F.3d at 828 (describing enforcement as "assist[ing] in giving effect to the law"

6

(cleaned up)).

Drexler indeed seeks prospective relief from state officers in their official capacities for alleged ongoing violations of federal law. The issue is whether the defendants she sued have any enforcement connection to the challenged statutes. We will consider each defendant or group of defendants in turn.

## A.    District Attorney

We begin with the easiest call. As the district court concluded, the District Attorney has the required enforcement connection with the challenged criminal protection-order and stalking statutes because Colo. Rev. Stat. § 20-1-102(1) directs district attorneys to prosecute actions on behalf of the state. *See People ex rel. Tooley v. Dist. Ct.*, 549 P.2d 774, 777 (Colo. 1976) (explaining that state constitution and statutes "grant the bulk of prosecutorial powers and duties to the district attorneys"). The District Attorney accepted as much below and takes the same position on appeal. Thus, the *Ex parte Young* exception to Eleventh Amendment immunity permits Drexler's challenge to the criminal protection-order and stalking statutes to proceed against the District Attorney.[7]

## B.    Attorney General

Drexler offers a variety of theories for why the Attorney General has the requisite enforcement connection to all the challenged statutes. Beginning with the

---

[7] The district court didn't find that the District Attorney had enforcement connections to any of the other challenged laws, and Drexler doesn't dispute as much on appeal.

protection-order and stalking statutes, Drexler suggests that the Attorney General has the duty and willingness to enforce them because he is a "peace officer" authorized to enforce all state laws, including those she challenges. *See* Colo. Rev. Stat. § 13-14-107(2) (noting "duties of peace officers enforcing a civil protection order"); *id.* § 16-2.5-128 (designating attorney general as "peace officer[] whose authority shall include the enforcement of all laws of the state of Colorado"); *id.* § 16-3-110(2) (giving peace officers "authority to act in any situation in which a felony or misdemeanor has been or is being committed in such officer's presence"); *id.* § 18-6-803.5(3)(a), (b) (criminal protection-order statute stating that "peace officer shall use every reasonable means to enforce a protection order," including arrests and seeking warrants); *id.* § 18-3-602(7) (stalking statute providing that "[a] peace officer shall have a duty to respond as soon as reasonably possible to a report of stalking").

But as the Attorney General points out in response—and as the district court concluded—status as a peace officer is too generic to constitute a particular enforcement connection. Colorado's definition of "peace officer" is wide-ranging, including not only police officers and sheriffs, but also reserve deputy town marshals, certain employees in the department of revenue, wildlife officers, public-transit officers, and Colorado rangers. *See id.* § 16-2.5-102. If these individuals' general duty to enforce the law based on their status as peace officers were sufficient to avoid immunity, then any citizen could name any of them in an action challenging nearly any Colorado statute. Simply put, the *Ex parte Young* exception would swallow the rule of sovereign immunity.

That's expressly what the Supreme Court cautioned against in *Ex parte Young*, explaining that if status as a "law officer[] of the state" were sufficient, "then the constitutionality of every act passed by the legislature could be tested by a suit against . . . the attorney general." 209 U.S. at 157. To be sure, the Court in *Ex parte Young* ultimately permitted the suit to proceed against the attorney general, but that holding wasn't based on general enforcement authority—it was based on the attorney general's actual conduct in commencing proceedings to enforce the challenged statutes. *Id.* at 160–61. The same was true in *Kitchen v. Herbert*, where the attorney general "demonstrated a 'willingness to exercise' [the] duty to ensure clerks" enforced the challenged state marriage laws. 755 F.3d 1193, 1203 (10th Cir. 2014) (quoting *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010)). But here, Drexler points to no similar willingness on the part of the Attorney General to enforce the protection-order or stalking statutes.

Thus, this case is the same as *Free Speech Coalition*, where we held that the attorney general was not subject to suit under *Ex parte Young* because he had only "general responsibility for enforcing . . . state laws," which did not constitute enforcement authority "in connection with the [challenged law]." *Free Speech Coal.*, 119 F.4th at 740. This was not an unusual result: *Free Speech Coalition* relied in part on *Hendrickson*, where we likewise held that an attorney general was not a proper defendant by way of his general enforcement power. *Free Speech Coal.*, 119 F.4th at 739; *see also Hendrickson*, 992 F.3d at 967. Drexler seeks to distinguish *Hendrickson* on the basis that the challenged law there, unlike the laws here, expressly placed

enforcement authority in an independent board. But the definitive question under *Ex parte Young* is whether the attorney general enforces or gives effect to the law, not whether enforcement has been expressly placed elsewhere.[8] *See Free Speech Coal.*, 119 F.4th at 740 ("[T]he enforcement inquiry under *Ex parte Young* does not ask whether enforcement has been expressly prohibited; it asks whether a defendant enforces or gives effect to the law."). We therefore reject Drexler's peace-officer argument.[9]

For similar reasons, we also reject her invocation of the Attorney General's authority as the state's chief legal representative. On this point, Drexler highlights that the Attorney General defended the constitutionality of the stalking statute in

---

[8] Drexler's discussion of *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013), is similarly unpersuasive. The statute there placed exclusive enforcement authority in sheriffs, thus preventing a lawsuit against the director of the department of public safety. *Id.* at 1202, 1206–07. To be sure, there's no exclusivity provision at issue here, but that doesn't answer the question of whether the Attorney General has the requisite enforcement connection to the challenged statutes.

[9] Drexler relatedly emphasizes that the Attorney General can act as a prosecutor when so designated by the governor and that he has acted as such at least twice while this litigation has been pending—making him an enforcer of the criminal protection-order and stalking statutes. *See Tooley*, 549 P.2d at 776 (noting that attorney general can act as prosecutor under Colo. Rev. Stat. § 24-31-101, but only with "a command from the governor or the general assembly"). The Attorney General acknowledges that the governor appointed him to limited-term prosecutorial positions in two judicial districts for a total of five months in 2022 and 2023. But the Attorney General then correctly points out that such "historic appointments of limited duration do not suggest [he] has roving, state-wide prosecutorial authority." State Aplee. Br. 23–24. Indeed, the Attorney General's limited appointments bear little similarity to *Ex parte Young* or *Kitchen*, for the reasons already discussed. They likewise bear limited similarity to the District Attorney's specific prosecutorial authority that subjects him to Drexler's challenges to the criminal protection-order and stalking statutes.

*Counterman v. Colorado*, 600 U.S. 66 (2023). But the Attorney General's authority "to be heard" in a criminal proceeding that includes "a claim alleging a state statute or municipal ordinance is unconstitutional" does not constitute enforcement authority.[10] Colo. Rev. Stat. § 16-9-501; *see also Free State Coal.*, 119 F.4th at 740–41 (rejecting similar argument under Utah law).

Next, in a single sentence quoting a newspaper article, Drexler insists that the Attorney General has the required enforcement connection to the criminal protection-order and stalking statutes because he purportedly assists with prosecutions statewide. And Drexler's complaint cites the Attorney General's website, which similarly notes that the office sometimes assists district attorneys. This does not establish that the Attorney General "ha[s] assisted or currently assist[s] in giving effect to the [challenged] law[s]." *Prairie Band*, 476 F.3d at 828 (cleaned up). As the Attorney General points out in response, although district attorneys are authorized to appoint special deputy district attorneys and attorneys general are eligible for such appointments, the special deputy district attorneys join the district attorney's office. *See* Colo. Rev. Stat. § 20-1-201(1)(c). In other words, should the Attorney General be appointed in this way, his function would be as a district attorney, not an attorney general.

Last, Drexler contends that the Attorney General has the required enforcement

---

[10] Nor is this case like *Eaves v. Polis*, where we held that the governor was a proper defendant in a suit challenging regulations and policies of the Colorado Department of Corrections because the department was "explicitly under the [g]overnor's control." 167 F.4th 1304, 1314 (10th Cir. 2026).

11

connection to the appeal statutes[11] because he is charged with ensuring access to the courts. This makes little sense. To the extent Drexler is suggesting that the Attorney General can be sued here for failing to comply with his duty to ensure her access to state court, that position fails for the reason offered by the district court: "the *Ex parte Young* exception does not apply to asserted violations of state, rather than federal, law." App. vol. 12, 3193 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)). And to the extent she suggests that the Attorney General has a duty to ensure that the statutes governing appeals are constitutional, that's a general responsibility, not "a particular duty to 'enforce' the statute in question." *Free Speech Coal.*, 119 F.4th at 736 (quoting *Prairie Band*, 476 F.3d at 828). Thus, we affirm the district court's conclusion that the Attorney General is immune from suit; he lacks the required enforcement connection to the challenged statutes to fall within the *Ex parte Young* exception to the Eleventh Amendment.

### C.    State Court Administrator

Next, Drexler argues that the State Court Administrator enforces the civil protection-order statutes and the attorney-fee statute.[12] The State Court Administrator

---

[11] Although Drexler's complaint alleged separate claims challenging (1) statutes governing appeals and (2) a statute and a rule governing reply briefs, her appellate brief groups these together under the category of "appeal statutes." Aplt. Br. 13 (cleaned up). We follow her lead and adopt her shorthand.

[12] By failing to provide adequate appellate argument, Drexler has waived on appeal any contention that the State Court Administrator enforces the appeal statutes or the criminal protection-order and stalking statutes: she provides three sentences on the former and none on the latter. *See San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1056 (10th Cir. 2011) (holding waived and declining to consider issue raised insufficiently in opening brief).

is appointed by the Colorado Supreme Court; duties of the position include "ensur[ing] proficiency in court reporting," handling complaints about family-law investigators, providing data to the legislature, and presenting statistics to the judicial department about extreme-risk protection orders. Colo. Rev. Stat. § 13-3-101. As particularly relevant here, the State Court Administrator "shall design and make available to the courts copies of a standardized set of forms that shall be used in the issuance and verification of service of civil protection orders." *Id.* § 13-1-136(2). The statute further explains that the State Court Administrator "shall design the standardized set of forms in such a manner as to make the forms easy to understand and use and in such a manner as will facilitate and improve the procedure for requesting, issuing, and enforcing civil protection orders." *Id.*

The district court ruled that the State Court Administrator did not enforce the challenged statutes because they are an administrator who works to resolve disputes between litigants. *Cf. Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (explaining that court clerks don't usually "enforce state laws as executive officials might; instead, they work to resolve disputes between parties"). The district court also explained that "publish[ing] the form used to issue protection orders" is "an administrative duty [that] does not imbue the State Court Administrator with authority to issue a protection order, decide the grounds upon which one may issue, or otherwise assist in giving effect to the civil protection-order statutes." App. vol. 12, 3192 n.12.

On appeal, Drexler faults the district court for focusing on "publication" of the

13

forms, emphasizing that designing and distributing the forms is aimed at allowing enforcement and thus "giv[es] effect to the law[s]," specifically the civil protection-order and the attorney-fee statutes. *Prairie Band*, 476 F.3d at 828 (cleaned up). But the district court did not misunderstand. It correctly determined that merely creating forms that individuals can use to obtain civil protection orders—forms that include a check box for the award of attorney fees—is not sufficiently close to enforcement for purposes of *Ex parte Young*. Compare, again, *Free Speech Coalition*, in which we rejected the argument that a public-safety commissioner had an enforcement connection to an age-verification statute simply because he oversaw a state program that could theoretically provide a means of complying with the statute. 119 F.4th at 737–38. We distinguished this attenuated connection from *Prairie Band*, where the defendants enforced vehicle-registration laws by managing registrations and issuing tickets. *See Free Speech Coal.*, 119 F.4th at 737 (discussing *Prairie Band*, 476 F.3d at 820–21, 828). Any connection established by the State Court Administrator's creation of forms used for obtaining civil protection orders—or by working with law enforcement to create such forms, Colo. Rev. Stat. § 13-1-136(3); or by providing grants for funding legal representation to domestic-violence victims, *id.* § 13-3-101(6)—is even more attenuated than in *Free Speech Coalition*.

Drexler also takes issue with the district court's reliance on *Whole Woman's Health*, arguing that court clerks like the State Court Administrator can be proper defendants when the claims concern administrative duties. In support, she cites *Courthouse News Service v. Gilmer*, 48 F.4th 908 (8th Cir. 2022). There, when the

14

state switched to an e-filing system, reporters could no longer access court filings on the day they were filed. *Id.* at 910. The reporters asked a clerk and the state courts administrator for same-day access but were rebuffed. *Id.* When they sued these court clerks, the Eighth Circuit held that sovereign immunity did not bar the action, explaining that unlike in *Whole Woman's Health*, the injunction sought would not restrain the state courts from acting but would instead direct the court clerks to carry out their duties differently. *Courthouse News Serv.*, 48 F.4th at 912. As this summary should make obvious, the enforcement connection in *Courthouse News Service* was direct: the clerks controlled access to filings, and the reporters wanted access. *Id.* at 912–13. Here, by contrast, Drexler seems to want the civil protection-order and attorney-fee statutes declared unconstitutional, and the State Court Administrator has nothing to do with enforcing those statutes. They merely create and provide forms that permit private parties to obtain civil protection orders and attorney fees, which is the "[u]sual[]" case of a court clerk "work[ing] to resolve disputes between parties." *Whole Woman's Health*, 595 U.S. at 39. Thus, we affirm the district court's ruling that the State Court Administrator is entitled to Eleventh Amendment immunity.

### D.    Judicial Defendants

Finally, Drexler contends that defendant judicial officers have the required enforcement connections to all challenged statutes.[13] The district court rejected this

---

[13] Although it's not entirely clear, we will assume for purposes of this discussion that Drexler named at least one judicial defendant in connection with each of the challenged statutes. We will further assume that declaratory relief against judges is available.

15

position, explaining that "[t]he *Ex parte Young* exception generally does not apply to state-court judges . . . because 'those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between the parties.'" App. vol. 12, 3185–86 (quoting *Whole Woman's Health*, 595 U.S. at 39). The district court further noted that per *Ex parte Young*, "an injunction against a state court or its machinery would be a violation of the whole scheme of our [g]overnment." *Id.* at 3186 (cleaned up) (quoting *Whole Woman's Health*, 595 U.S. at 39); *see also Ex parte Young*, 209 U.S. at 163 ("It is proper to add that the right to enjoin an individual, even though a state official, from commencing suits under circumstances already stated, does not include the power to restrain a court from acting in any case brought before it, either of a civil or criminal nature . . . .").

On appeal, Drexler accepts that merely adjudicating disputes between private litigants doesn't constitute "enforcement" under *Ex parte Young*. *See Whole Woman's Health*, 595 U.S. at 39. Instead, she argues that the judicial defendants enforce the protection-order statutes because, in connection with adjudicating disputes between private litigants, judges can initiate contempt proceedings. This is a nonsequitur. A court's power to hold in contempt anyone who fails to comply with its orders is not a means of enforcing the challenged statutes; such power merely follows from the issuance of the protection order, which is an adjudication, not enforcement. Further, the judges' "application of the [contempt] statute[, Colo. Rev. Stat. § 13-14-107,] is part of their role as adjudicators, which does not render them 'contestants in the parties' litigation.'" Cnty. Aplee. Br. 8 (quoting *Whole Woman's Health*, 595 U.S. at

16

40).[14] The same is true of the attorney-fee statute. And the appeal statutes likewise are not *enforced* by judicial officers; these are procedural "rules for the orderly administration of cases and appeals" that simply assist judges in neutrally adjudicating disputes between parties. State Aplee. Br. 42.

As the county judges point out, this case is nothing like *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980), or *Georgevich v. Strauss*, 772 F.2d 1078 (3d Cir. 1985), both of which Drexler cites. The defendant court in the former case could be sued because the action challenged professional-responsibility rules that the court could enforce against attorneys. *See Sup. Ct. of Va.*, 446 U.S. at 723–24. And in the latter, the defendant judges enforced the challenged parole statutes because they had some authority over parole decisions. *See Georgevich*, 772 F.2d at 1087–88. These examples serve only to highlight that the judicial defendants here do nothing to enforce the challenged statutes. Indeed, an order enjoining the judicial defendants from enforcing these statutes would constitute nothing more than "restrain[ing] a court from acting," which *Ex parte Young* does not permit. 209 U.S. at 163. We therefore affirm the district court's conclusion that the

---

[14] Drexler's attempt to distinguish *Whole Woman's Health* fails. She insists that the defendant judge there lacked an enforcement connection because the statute exclusively limited enforcement to private parties, and that was why the judge couldn't initiate prosecution or civil-enforcement actions and did not enforce. *See Whole Woman's Health*, 595 U.S. at 35–36 (explaining that "the law generally does not allow state officials to bring criminal prosecutions or civil enforcement actions" and instead provides for enforcement by private civil action). But the exclusivity of the remedy in the statute was not the basis for the holding in that case—the critical point was that the judge did not *share* any enforcement authority. *See id.* at 39.

17

judicial defendants are entitled to Eleventh Amendment immunity because they don't enforce any of the challenged statutes.

In sum, the Attorney General, the State Court Administrator, and the judicial defendants are immune from suit, so the district court correctly dismissed the claims against them for lack of jurisdiction. Only Drexler's challenges to the criminal protection-order and stalking statutes, asserted against the District Attorney, survive the Eleventh Amendment inquiry.

## II.    Standing

To successfully assert such challenges, Drexler must establish that she has standing to do so. The standing requirement comes from Article III of the Constitution. *Peck*, 43 F.4th at 1129. The plaintiff bears the burden of establishing the three elements required for Article III standing: "(1) an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent,' (2) that . . . is 'fairly traceable to the challenged action of the defendant,' and (3) that . . . is likely to be 'redressed by a favorable decision' of the court." *Id.* (cleaned up) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). In the context of Drexler's First Amendment challenge to these statutes, the parties agree that showing injury requires "alleging 'a credible threat of future prosecution' plus an 'ongoing injury resulting from the statute's chilling effect on [the plaintiff's] desire to exercise [their] First Amendment rights.'" *Id.* (quoting *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003)). Stated slightly differently, when a plaintiff claims a chilling effect, they must present:

(1) evidence that in the past they have engaged in the type of speech

18

affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced.

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc). To show a credible threat, a plaintiff needs to show "an objectively justified fear of real consequences." *Peck*, 43 F.4th at 1132 (quoting *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006)). At least three factors guide this analysis: past enforcement against the same conduct; whether there is broad authority to initiate charges; and state disavowal of "future enforcement." *Id.* (quoting *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1174 (10th Cir. 2021)).

Applying these principles here, the district court concluded that Drexler could not show a credible threat of prosecution. Overarchingly, it reasoned that she couldn't establish a credible threat that the criminal protection-order statute would be enforced against her because, as we noted in her prior appeal, the protection order by its own terms does not restrict her First Amendment rights. *See Drexler*, 2022 WL 17333076, at *2. Moreover, the district court explained, the stalking statute can be enforced only by the District Attorney, who has declared that he would not prosecute Drexler for First Amendment activities. Drexler challenges both conclusions on appeal.

Drexler's first argument is limited to the protection-order statute. She contends that the district court erred in relying on our ruling in her prior appeal to find no credible threat of prosecution. According to Drexler, that prior ruling "is irrelevant to

19

credible fear" because standing is assessed at the time a claim is asserted, and she asserted this claim before our prior ruling. Aplt. Br. 42. To be sure, we do typically determine standing "at the time the action is brought, and we generally look to when the complaint was first filed, not to subsequent events." *Mink v. Suthers*, 482 F.3d 1244, 1253–54 (10th Cir. 2007) (cleaned up). But even so, we also consider "the amended complaint in assessing a plaintiff's claims, including the allegations in support of standing." *Id.* at 1254. Thus, in *Mink*, we concluded that the plaintiff lacked standing where he showed a credible threat at the time he first filed his complaint but no longer could at the time of his amended complaint, due to an intervening prosecutorial disavowal. *Id.* at 1254–55. So there's no issue with considering whether a credible threat existed at the time of Drexler's amended complaint, which she filed in April 2024, well after this court's November 2022 ruling that the protection order didn't restrict her First Amendment rights.

Drexler next faults how we characterized the protection order in our prior decision. As an initial matter, it's not clear whether we are free to interpret the protection order differently than we did before; according to the District Attorney, our prior characterization is the law of the case. But we need not determine whether we're bound by the prior decision because that decision is simply correct. *See Drexler*, 2022 WL 17333076, at *2 ("The protection order itself didn't say anything that would restrict . . . Drexler's right to speech."). The protection order states that Drexler "shall not contact, harass, stalk, injure, intimidate, threaten, touch, sexually ass[a]ult, abuse, or molest" the protected individuals. App. vol. 7, 1964. According to

Drexler, this list of verbs means that the protection order does more than "merely forbid[] [her] from contact," which is what we concluded in the prior appeal (relying on a Colorado state court's view). *Drexler*, 2022 WL 17333076, at *2 (quoting *Drexler v. Spahn*, No. 2020CV30610, slip op. at 3 (Denver Dist. Ct. Aug. 16, 2020) (available at App. vol. 2, 415)). But we did not say *only* that the protection order merely forbids contact—we quoted the prior state-court decision that "'nothing in the protection order prohibits . . . Drexler from publishing written materials' or 'otherwise intrudes on her protected First Amendment activities.'" *Id.* (cleaned up) (quoting *Drexler*, No. 2020CV30610, slip op. at 3 (available at App. vol. 2, 415)). And that's plainly accurate, looking at the text of the protection order itself.

So, returning to the overall idea of "credible threat," the key question is whether Drexler's fear of being criminally prosecuted for violating the protection order by exercising her First Amendment rights is "an objectively justified fear of real consequences." *Peck*, 43 F.4th at 1132 (quoting *Winsness*, 433 F.3d at 732). Given that the protection order by its own terms doesn't restrict Drexler's First Amendment rights—and that two courts have expressly said as much—her fear of being criminally prosecuted for violating the protection order in a way that chills her First Amendment rights is not objectively reasonable.

*Peck*'s credible-threat factors support this common-sense conclusion—and here, we expand our discussion to consider both the protection-order statute and the stalking statute. First, there is no "past enforcement against the same conduct." *Id.* (quoting *303 Creative*, 6 F.4th at 1174). At best, Drexler seems to suggest that the

protection order itself was imposed in retaliation for her protected First Amendment speech and petitioning activities. But even if we were to accept that as true, it was the result of a private individual seeking a protection order against Drexler, not the result of an action taken by the District Attorney, who is the only defendant on this claim. And the standing inquiry, including this credible-threat aspect, is defendant-specific. *Cf. Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813 (10th Cir. 2021) (noting that we address standing "claim-by-claim" and that injury must be "fairly traceable to the challenged conduct of the defendant").

As to the "authority to initiate charges" for a criminal violation of a protection order or for stalking, *Peck*, 43 F.4th at 1132 (quoting *303 Creative*, 6 F.4th at 1174), Drexler asserts that the district court wrongly concluded that these statutes can be enforced by only the District Attorney. In support, she points to the authority of peace officers—a broad category, as already discussed—to arrest individuals on suspicion of violating a protection order or of stalking and cites *Winsness* for the proposition that "credible fear is not limited to fear of prosecution." Aplt. Br. 44. This twists the legal standard, which requires showing "a 'credible threat *of prosecution*,'" *Winsness*, 433 F.3d at 732 (emphasis added) (quoting *Ward*, 321 F.3d at 1267), not just "credible fear," Aplt. Br. 44. The phrasing is important; the credible-threat requirement exists because "[t]he mere presence . . . of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue." *Winsness*, 433 F.3d at 732. Thus, the mere fact that a peace officer could arrest Drexler on suspicion of violating the

22

protection order or the stalking statute—or literally any other criminal statute, for that matter—is not sufficient to establish that anyone other than the District Attorney can *prosecute* her for violating those statutes. *See Peck*, 43 F.4th at 1132 (weighing this factor against plaintiff where only prosecutors could bring charges). Indeed, that only the District Attorney enforces the criminal statutes is the very reason the District Attorney is the only remaining defendant after the Eleventh Amendment analysis.

The final factor is "whether the state disavowed future enforcement." *Id.* (quoting *303 Creative*, 6 F.4th at 1174). The District Attorney did so here, and Drexler's attempts to find fault with that disavowal are unpersuasive. She first insists that the District Attorney's declaration was filed too late to be relevant to standing, which is assessed as of the date the complaint was filed. But as already noted, courts can also look to amended complaints when assessing standing. *See Mink*, 482 F.3d at 1254. And Drexler's fourth amended consolidated complaint postdated the District Attorney's declaration. To be sure, the prosecutorial disavowal in *Mink* took place "immediately after the lawsuit was filed" and "well before" defendants moved to dismiss. *Id.* at 1254–55. Drexler says neither circumstance existed here and suggests that the disavowal is unpersuasive because it's a product of litigation. But Drexler did not name the District Attorney as a defendant until her third amended complaint, filed in August 2023. The District Attorney then filed the declaration about three months later, attached to a motion to dismiss. There's nothing dilatory or suspect

about this sequence of events.[15]

Drexler next suggests that the declaration did not offer a complete disavowal. She facetiously states that the declaration didn't disavow prosecution under the stalking statute, even though it plainly encompasses both the criminal protection-order and stalking statutes. The declaration states that the District Attorney would not prosecute Drexler under the statutes solely for "publish[ing] a written work or read[ing] from a written work at a location where . . . the . . . protected parties were not present." App. vol. 6, 1692. To be sure, this disavowal is somewhat more limited than those in *Winsness* and *D.L.S.*, which involved flag-desecration and sodomy statutes that were very likely facially unconstitutional under intervening binding case law. *See Winsness*, 433 F.3d at 733, 736; *D.L.S.*, 374 F.3d at 974–75. So the disavowals there were complete in that the statutes simply would not be enforced at all. But that doesn't mean the disavowal here is ineffective. To the contrary, it indicates that the District Attorney "ha[s] no intent to prosecute . . . Drexler for any activity she engages in that is protected by the First Amendment." App. vol. 6, 1692.

---

[15] Drexler relies on *In re Atlas Van Lines, Inc.*, 209 F.3d 1064 (8th Cir. 2000), for the argument that we should not reference documents filed after her third amended complaint to assess standing. But the argument fails. *Atlas Van Lines* was about involuntary amendments and removal, not standing. *Id.* at 1067 ("[W]hen a district court orders a party to amend its complaint or when the decision to amend is otherwise involuntary, the question of proper removal must be answered by examining the original rather than the amended complaint."). Moreover, Drexler added the District Attorney in her third amended complaint, which she filed voluntarily, not in her fourth amended consolidated complaint, which she filed at the court's order.

That's sufficient in these circumstances.[16]

Finally, Drexler faults the newly elected District Attorney for (1) not affirming the declaration in the district court upon his substitution on February 25, 2025, about a month before the district court's March 31, 2025 ruling and (2) submitting a new declaration on appeal, attached to his response brief. Neither point is meaningful or determinative. As we noted in *Mink*, even though a disavowal "conceivably might not bind other district attorneys, . . . the 'possibility' of future enforcement need not be 'reduced to zero' to defeat standing." 482 F.3d at 1255 (quoting *Winsness*, 433 F.3d at 733). So the newly elected District Attorney's failure to immediately affirm the declaration is irrelevant. And we would reach the same conclusion even in the absence of his newly filed additional declaration.[17] The existing declaration is sufficient to establish that "the state disavowed future enforcement." *Peck*, 43 F.4th at 1132 (quoting *303 Creative*, 6 F.4th at 1174).

In sum, none of the *Peck* factors support Drexler, and she can't establish a credible threat that the criminal protection-order and stalking statutes will be

---

[16] In a letter of supplemental authority, Drexler invokes *Khalil v. Trustees of Columbia University*, No. 25-cv-2079, 2026 WL 775813 (S.D.N.Y. Mar. 19, 2026). There, the Southern District of New York ruled that plaintiff students had standing to assert a pre-enforcement challenge to the university's revised antidiscrimination policy, noting that the policy's express carve-out for free speech did not negate a credible fear of enforcement. *Id.* at *6. This makes sense, since a contrary result would allow a legislature to insulate laws from pre-enforcement challenges by including similar boilerplate. Drexler's case is different: it doesn't involve a carve-out written into the law itself, but instead a specific declaration from the District Attorney stating that he won't prosecute Drexler for writing or performing her work.

[17] For this reason, we reject Drexler's reply-brief request to strike the new declaration.

enforced against her in a manner that chills her First Amendment rights. We affirm the district court's ruling that Drexler lacks standing to assert her challenges to the criminal protection-order and stalking statutes.

## III.    Procedural Challenges

As a final matter, we briefly address two procedural points regarding Drexler's inability to file a preliminary-injunction motion and seek discovery into her John Doe defendant. The first ruling implicates mootness, which is an issue we review de novo. *See Robert v. Austin*, 72 F.4th 1160, 1163 (10th Cir. 2023). The second is a more traditional discovery ruling, which we review for abuse of discretion. *See Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002).

By way of background, Drexler filed two motions below regarding preliminary injunctive relief; both sought to exceed the word limitation for a preliminary-injunction motion and were filed after the magistrate judge stayed merits briefing. The first motion was captioned "Motion for Leave to Exceed Word Limitation in Motion for Preliminary Injunction (in the Alternative to Merits Briefing)" and sought "leave to exceed the word limitation . . . for a motion for preliminary injunction, to be filed in the alternative to the previously[ ]ordered merits briefing." App. vol. 10, 2760, 2765. She then filed a second such motion, explaining that she planned to seek a preliminary injunction *because* the magistrate judge had stayed merits briefing pending rulings on defendants' motions to stay and dismiss:

> Given the new delay in merits briefing and the consequent delay in the adjudication of the constitutional merits of the statutes, and to remedy the impermissibl[e] First Amendment chilling caused thereby to herself

and others, [Drexler] intends to request relief by motion for preliminary injunction against the non[]judicial defendants, in the alternative to the previously[ ]ordered merits briefing.

*Id.* at 2778. So, when the district court overruled the magistrate judge's briefing stay and ordered merits briefing from the nonjudicial defendants, it denied as moot Drexler's requests to file a preliminary-injunction motion.

Drexler thereafter moved to obtain merits briefing from the State Court Administrator, as well. In so doing, she acknowledged that her first motion regarding a preliminary-injunction motion was phrased in the alternative but disputed that her second motion continued that trend. In any event, she "agree[d] that merits briefing provides an adequate alternative basis for [the district court] to rule on the constitutional merits of the statutes." App. vol. 11, 2851 n.2. And she requested, "[i]n the alternative to merits briefing" from the State Court Administrator, "that she be permitted limited discovery to determine the identity of any 'John Doe' state official who may be properly named to defend the challenged statutes." *Id.* at 2855. The district court denied the motion for merits briefing from the State Court Administrator as moot after it dismissed the claims against that defendant. And it implicitly denied the request for John Doe discovery in the same order, when it dismissed Drexler's claims against John Doe because she'd had plenty of time to seek out the proper defendants.

Drexler doesn't offer much argument for why the district court erred in any of these rulings. She suggests that she would have been entitled to an evidentiary hearing on a preliminary-injunction motion, but such hearings aren't guaranteed. *See*

27

*Jackson v. Fair*, 846 F.2d 811, 819 (1st Cir. 1988) (noting that Federal Rule of Civil Procedure 65, which governs preliminary injunctions, "does not give a plaintiff an unqualified right to an evidentiary hearing"). Nor does she advance any argument for why her request to file a preliminary-injunction motion, phrased in the alternative, wasn't mooted by the district court ordering her requested merits brief.

She likewise fails to grapple with the district court's ruling implicitly denying John Doe discovery. Drexler does not explain why the district court's rationale—that she'd had ample time and opportunity to identify the proper defendants and amend her complaint—was an abuse of discretion. And we don't see how it could be, given that the district court offered this explanation four years into this litigation and on Drexler's fourth amended complaint.[18] We therefore see no reversible procedural errors on this record.

## Conclusion

Most of Drexler's claims are barred by Eleventh Amendment immunity that cannot be evaded by recourse to *Ex parte Young* because most of the named defendants don't enforce most of the challenged statutes. Drexler's remaining claims fail for lack of standing because she can't show a credible threat of enforcement. So

---

[18] Drexler incorrectly asserts that the district court stayed discovery but permitted the Attorney General and District Attorney to request it. What the district court said, in an order directing those two defendants to file merits briefs, was that if they "believe[d] some sort of discovery is necessary to resolve the claims against them, they may raise that issue in their response briefs." App. vol. 10, 2825 n.4. We see nothing improper in that comment.

we affirm the district court's order dismissing Drexler's complaint for lack of jurisdiction. And we reject her meritless procedural challenges.

Entered for the Court

Nancy L. Moritz
Circuit Judge